860 July 29, 2026 No. 722

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. M. M. J. O.-S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

A. M. M. J. O.-S.,
*Respondent,*

*v.*

M. R. S.-O.-S.
and A. J. O.-S.,
*Appellants.*

Polk County Circuit Court
20JU06620; A189615 (Control), A190129

In the Matter of E. H. S.-O.-S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

E. H. S.-O.-S.,
*Respondent,*

*v.*

M. R. S.-O.-S.
and A. J. O.-S.,
*Appellants.*

Polk County Circuit Court
20JU06621; A189616, A190130

In the Matter of T. R. O.-S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

T. R. O.-S.,
*Respondent,*

*v.*

M. R. S.-O.-S.
and A. J. O.-S.,
*Appellants.*

Polk County Circuit Court
22JU01825; A189617, A190131

Norman R. Hill, Judge.

Argued and submitted June 17, 2026.

George W. Kelly argued the cause and filed the brief for appellant A. J. O.-S.

Holly Telerant, Deputy Public Defender, argued the cause for appellant M. R. S.-O.-S. Also on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Christa Obold Eshleman argued the cause for respondents A. M. M. J. O.-S., E. H. S.-O.-S., and T. R. O.-S. Also on the brief was Youth, Rights & Justice.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also on the brief were Dan Rayfield, Attorney General, and Paul L. Smith, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Leith, Senior Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this consolidated juvenile dependency case, mother and father appeal from judgments in which the juvenile court changed the permanency plans for their children, A, E, and T, aged 6, 5, and 3, respectively, at the time of the permanency hearing, from reunification to adoption. Mother and father both challenge the court's ruling that their progress toward reunification was insufficient, alleging that the court relied on extrinsic evidence in reaching that conclusion. They also challenge the court's determination that no compelling reason existed to not change the children's permanency plans to adoption. Both parents therefore assert that the juvenile court erred in changing the plan to adoption. For the following reasons, we affirm.

Neither mother nor father has requested that we review *de novo*, and we do not exercise our discretion to engage in such review in this case. We are therefore bound by the juvenile court's findings of historical fact—including what actions the parents took—if there is any evidence in the record to support them. *Dept. of Human Services v. Y. B.*, 372 Or 133, 151, 546 P3d 255 (2024). We review the juvenile court's determinations that the parents' progress is insufficient and that there is no compelling reason to forgo a plan of adoption for errors of law. *Dept. of Human Services v. S. J. M.*, 364 Or 37, 56-57, 430 P3d 1021 (2018) (reviewing a compelling reasons determination); *Dept. of Human Services v. T. R. P.*, 344 Or App 375, 377, 580 P3d 365 (2025) (reviewing an insufficient progress determination).

Except in specific circumstances not applicable here, the juvenile court is authorized to change a child's permanency plan from reunification to adoption if the proponent of that plan change—ODHS in this case—proves that ODHS's efforts to reunify the parent and child have been reasonable and that, despite those reasonable efforts, the parent's progress toward reunification has been insufficient.[1] ORS 419B.476(2)(a); *Dept. of Human Services v. L. M. K.*, 319 Or App 245, 252, 510 P3d 278 (2022). "[B]oth [ODHS's] efforts and a parent's progress are evaluated by reference to the

---

[1] Parents do not challenge the juvenile court's determination that ODHS's efforts were reasonable.

facts that formed the bases for juvenile court jurisdiction." *Dept. of Human Services v. N. T.*, 247 Or App 706, 715, 271 P3d 143 (2012). That is, the court may rely on facts that are "explicitly stated or fairly implied by the jurisdictional judgment" in making its determinations regarding ODHS's reunification efforts and the parent's progress. *Id.* at 715-16.

A parent need not completely ameliorate the bases for dependency jurisdiction for their progress to be "sufficient." *Y. B.*, 372 Or at 146. Instead, a parent's progress is "sufficient" if it would make the child's safe return home possible, with or without continued services and support. *Id.* at 154. Conversely, "[e]ven if a parent has completed all services that have been required, evidence that a parent continues to engage in behavior that is harmful to a child supports a determination that the parent has not made sufficient progress to make it possible for the child to return home." *Dept. of Human Services v. G. N.*, 263 Or App 287, 297, 328 P3d 728, *rev den*, 356 Or 638 (2014).

When a juvenile court has made the determination to change a child's permanency plan away from reunification, its goal then is to select a plan "that is most likely to lead to a positive outcome for the child." *State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 183, 205 P3d 36 (2009). To that end, ORS 419B.476(5) requires the court to address specified issues in the judgment changing a child's permanency plan. As relevant here, when a child's plan is being changed to adoption, ORS 419B.476(5)(d) requires the court to address whether any of the circumstances in ORS 419B.498(2) apply. ORS 419B.498(2) lists reasons the court may allow ODHS to forgo or delay filing a petition to terminate parental rights in a dependency case, one of which is the existence of a "compelling reason, which is documented in the case plan, for determining that filing such a petition would not be in the best interests of the child or ward." The statute provides some examples of compelling reasons, one of which is that "[a]nother permanency plan is better suited to meet the health and safety needs of the child or ward, including the need to preserve the child's or ward's sibling attachments and relationships." ORS 419B.498(2)(b)(B). The party arguing that a compelling reason exists bears the

burden to prove facts that would allow the court to make that determination. *S. J. M.*, 364 Or at 53-55.

Having reviewed the record, we conclude that the juvenile court did not err in determining that parents' progress toward reunification was insufficient. The court asserted dependency jurisdiction over A and E based on the parents' admission to the following jurisdictional bases: mother exposing the children to unsafe persons and circumstances; both parents lacking the parenting skills necessary to safely and appropriately parent the children, including father lacking skills surrounding appropriate and safe physical disciplinary skills; and father having previously had his parental rights to other children terminated, with the conditions and circumstances giving rise to those terminations not having changed or been ameliorated.[2] The following year, jurisdiction was also established as to T, and parents admitted to jurisdiction over all three children based on the parents' volatile relationship with each other creating an emotionally and/or physically unsafe environment for the children.

The juvenile court found that parents had failed to make sufficient progress, most specifically as related to the domestically violent relationship between them. Despite parents' assertions that they had worked on their relationship and no longer engaged in domestic violence, the court was not convinced and concluded that the domestically violent structure of their relationship remained intact. The court pointed to evidence of mother minimizing father's responsibility for his actions towards her and the children, and her unwillingness to acknowledge his abuse; father's lack of comprehension of how he had impacted his family, his failure to engage in treatment, and his failure to address "his own power and control, manipulation, and inappropriate

---

[2] The prior terminations in 2015 and 2016 were based on father's exposure of children and their siblings to intimate terrorism; failure to learn parenting and housekeeping skills sufficient to provide a safe and stable home; mental, emotional, or psychological abuse of a child; an emotional illness, mental illness, or mental deficiency of such nature and duration as to render father incapable of providing care for extended periods of time; conduct toward a child of a cruel, abusive, or sexual nature; failure to protect a child's siblings from physical abuse; physical and emotional neglect of a child; and lack of effort to adjust his circumstances.

discipline;" and ongoing power and control dynamics between parents. The juvenile court further explained that it was not convinced that issues of domestic violence had been resolved simply because there had been no recently reported or documented violent incidents between parents. In light of other evidence of ongoing problematic issues, and parents' failure to acknowledge and address past failures, we conclude that that was a reasonable inference.

The juvenile court further noted the exceptionally high needs of the children, and despite evidence of good interactions between parents and children in the controlled supervised environment of visits arranged through ODHS, the court was not convinced that parents were capable of providing the intense care and supervision that the children required, or that parents would be able to do so in the foreseeable future. Based on our review of the extensive record, those findings are supported by the evidence.

Mother asserts in her brief that the juvenile court improperly relied on the children's significant mental health needs and father's failure to engage in suggested mental health treatment, because those facts were extrinsic to the established bases for jurisdiction. We disagree. Father's mental health was an established basis for jurisdiction, based on the reference to ongoing conditions and circumstances that had resulted in the termination of rights to father's older children, which included his "emotional illness, mental illness, or mental deficiency of such nature and duration as to render the parent incapable of providing care for extended periods of time." Moreover, jurisdiction over all three children was based on the emotionally and physically unsafe environment the parents' volatile relationship had created. The court's conclusion regarding the children's high care needs was rooted in their need for patient caregivers and a home completely free of domestic violence, and that exposure to further violence would be devastating to the children given their particular needs. In short, the court did not rely on evidence that was extrinsic to the established jurisdictional bases.

We additionally conclude that the juvenile court did not err in deciding on this record that a compelling reason

not to change the children's plans to adoption had not been proved. The juvenile court found that the children needed permanency now, and that although there was some bond with parents, the children's primary bond was not with parents. Furthermore, the court found that there was a high likelihood that parents would interfere with a guardianship, which would expose the children to further disruption. The record allowed the court to conclude that parents had not met their burden to prove that a different permanent plan was better suited to meet the children's health and safety needs. Further, the record does not compel a finding that the children's bond to parents and some other family members necessitates a plan other than adoption. Accordingly, the court did not err in changing the children's permanency plans from reunification to adoption.

Affirmed.